**In the Interest of R.P., Alleged to be Seriously Mentally Impaired and a Chronic Substance Abuser.**

No. 99–31.

Supreme Court of Iowa.

Feb. 16, 2000.

Robert E. Sabers, Dubuque, for appellant.

Mary Schumacher, Davenport, pro se, and Jane Wallis, Dubuque, pro se.

LARSON, Justice.

R.P., the respondent in this substance abuse case under Iowa Code chapter 125 (1997), has appealed from a district court order for treatment, claiming he was deprived of procedural due process. We affirm.

### I. *Facts and Prior Proceedings.*

On November 12, 1998, the respondent's mother, Jane Wallis, filed an application alleging he was a chronic substance abuser. *See* Iowa Code § 125.75. The respondent's sister, Mary Schumacher, furnished an affidavit in support of the application. A judicial magistrate found probable cause to support the application and ordered the respondent to be detained pending a hearing. The magistrate appointed an attorney to represent the respondent and appointed a physician to examine him.

Jane Mylrea, an associate juvenile court judge acting as a judicial hospitalization referee, held a bifurcated hearing on this substance abuse matter and a separate application that alleged the respondent was seriously mentally impaired. The referee concluded the respondent was seriously mentally impaired, and that finding is not challenged on appeal. The respondent, however, challenges the finding of chronic substance abuse, claiming the applicant had failed to establish the case through an adversary proceeding as required by the statute. *See* Iowa Code § 125.82. The reason the procedure was defective, he claims, is that the referee, rather than an attorney for the applicant, examined the witnesses.

In the first half of the hearing (on the application for commitment for serious mental impairment) an assistant county attorney presented the case for commitment. The referee concluded the respondent was seriously mentally impaired and stated she was going to order outpatient treatment. The referee then proceeded to the hearing on the application for substance abuse treatment. The assistant county attorney, however, excused herself, saying:

Your Honor, [the substance·abuse matter is] a separate proceeding. I only participate in the mental health proceeding, and so obviously, the witnesses are here, and that can be conducted.

After the assistant county attorney left, no one assumed the role of an attorney for the applicant. The referee then said

[w]e can proceed with the substance abuse petition at this time as well, and we'll do that separately. That's a separate petition. And so I just am going to ask a couple more questions of each of the applicants here regarding issues of substance abuse. Why don't we begin first with Jane Wallis [the applicant-mother].

The referee briefly questioned the respondent's mother, inquiring first what type of drug or alcohol the respondent was using "and what concerns you might have regarding said usage." The witness responded that her son drank vodka and orange juice, that he had an admitted drinking problem, and that he had refused to stop.

The referee then asked "[h]ow does the drinking affect his behavior?" The witness said it made the respondent more aggressive, it interfered with the medication he was taking for his mental health problems, and, in summary, "affects him desperately." The referee referred to some of this witness's testimony in the previous mental health hearing and asked if drinking exacerbated the respondent's mental health problem. The witness said, "Absolutely"; alcohol was "like poison to his system." The respondent's attorney then cross-examined this witness, mainly as to the effect of his drinking on his job performance.

The referee continued by briefly examining two other witnesses. Mary Schumacher, the respondent's sister, was asked by the court, "Do you have any further information to add to your mother's statement ... ?" The witness stated she did not think the respondent was an alcoholic, but

she was concerned about the effect of his alcohol use on his mental condition.

The doctor who had been appointed to examine the respondent was asked by the referee:

Dr. Piekenbrock, could you give your diagnosis and recommendation for treatment regarding the issue of substance abuse with [the respondent]?

The doctor testified that his own tests had not revealed that a drug or alcohol problem, but he relied on another report, apparently by a counseling service, that the respondent "meet[s] the criteria for an intermittent substance abuser, alcohol." The respondent's attorney briefly cross-examined the doctor.

The referee ordered outpatient treatment for alcohol abuse, stating:

[R.P.] is a substance abuser, alcohol, who is more aggressive, threatening and dangerous while under the influence of alcohol, which exacerbates his mental health problems such that he presents a danger to self or others. He meets the criterion for commitment for substance abuse on an outpatient basis.

## II. *The Issue.*

On appeal, the respondent does not challenge the sufficiency of the evidence finding him to be a substance abuser. Rather, he challenges the procedure under which the finding was made: the referee was so deeply involved in the presentation of the evidence in support of the application it amounted to a deprivation of his procedural due process rights. He contends substance abuse statute "clearly envision[s] an adversarial process in which the applicant bears the burden of establishing by clear and convincing evidence that the Respondent is a substance abuser."

(We note the respondent's attorney did not raise this objection at the time of the hearing. However, he has not been prejudiced because, for the reasons later discussed, we do not believe he was denied due process.)

### III. *Disposition.*

Iowa Code sections 125.75 to 125.94 establish a procedure for the involuntary commitment or treatment of chronic substance abusers. The Supreme Court has held that civil commitment for any purpose constitutes a significant deprivation of liberty requiring due process protection. *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330–31 (1979); *see also In re Bear,* 576 N.W.2d 303, 306 (Iowa 1998).

Under our statutory scheme, the county attorney or an interested person may commence proceedings for the involuntary commitment or treatment of a chronic substance abuser by filing an application. Iowa Code § 125.75. If the applicant is not the county attorney, and the applicant is financially unable to employ an attorney, the applicant may apply for the appointment of counsel. Iowa Code § 125.76. If the respondent (the subject of the application) does not have an attorney, and cannot afford one, or is incapable of assisting in the selection of one, the court shall either allow the respondent to choose an attorney or assign one. Iowa Code § 125.78(1). Section 125.82 provides the procedures for the commitment hearing:

1. At a commitment hearing, *evidence in support of the contentions made in the application shall be presented by the applicant,* or by an attorney for the applicant, or by the county attorney if the county attorney is the applicant. During the hearing the applicant and the respondent shall be afforded an opportunity to testify and to present and cross-examine witnesses, and the court may receive the testimony of other interested persons.

. . . .

4. *The respondent's welfare is paramount, and the hearing shall be tried as a civil matter and conducted in as informal a manner as is consistent with orderly procedure.* Discovery as permitted under the Iowa rules of civil procedure is available to the respondent.

The court shall receive all relevant and material evidence, but the court is not bound by the rules of evidence. A presumption in favor of the respondent exists, and *the burden of evidence and support of the contentions made in the application shall be upon the person who filed the application.* If upon completion of the hearing the court finds that the contention that the respondent is a chronic substance abuser has not been sustained by clear and convincing evidence, the court shall deny the application and terminate the proceeding.

Iowa Code § 125.82 (emphasis added).

■ The applicant, the respondent's mother, did not hire an attorney or request the district court to appoint one for her as permitted by Iowa Code section 125.78(2). Nevertheless, we believe evidence was "presented by the applicant," as required by section 125.82(1), through her own testimony and that of her witnesses. It is true the evidence came in on questioning by the referee; however, the referee did not display any evidence of becoming an advocate by such actions as extensive questioning, leading of the witnesses, or cross-examination of the respondent. The referee's questions, summarized above, were aimed merely at getting the witnesses' testimony started.

■ In an analogous case, we have recognized the power of a trial judge to question witnesses. *State v. Cuevas,* 288 N.W.2d 525, 532–33 (Iowa 1980). However,

[w]e do not encourage judges to enter the fray with their own interrogation of witnesses. And when cause to do so exists, restraint must be used. By engaging in the examination of witnesses the court becomes vulnerable to a multiplicity of criticisms; bias, prejudice or advocacy are some of these.

*Cuevas,* 288 N.W.2d at 533.

We must keep in mind that the substance abuse statute provides that the pro-

cedure should be as informal as possible, with the respondent's welfare of paramount importance. Iowa Code § 125.82(4). It would be preferable if an attorney would present evidence on behalf of the application. If the county attorney is the applicant, the county attorney would present the evidence. Under the statute, if the applicant is not the county attorney, the applicant, if indigent, may request the appointment of an attorney. However, the statute does not require that the applicant have legal representation. In fact, it provides "evidence in support of the . . . application shall be presented by the applicant, *or* by an attorney for the applicant . . . ." Iowa Code § 128.82(1) (emphasis added). The limited involvement of the referee in this case clearly did not violate the respondent's due process rights. Any "burden of proof" imposed by section 125.82(4) on the applicant, we believe, does not refer to a mechanics of presenting the evidence as argued by the respondent. Rather, it refers to a burden of proof in the sense that the applicant must bear the risk of nonpersuasion. That is, if the evidence in support of the application is not clear and convincing, the application fails. That was not the case here.

**AFFIRMED.**