625 N.W.2d 702 (2001)
In the Matter of M.T., Alleged to be Seriously Mentally Impaired,
M.T., Appellant.
No. 00-0886.
Supreme Court of Iowa.
April 25, 2001.
*703 Mary L. McGee, Des Moines, for appellant.
Aaron Siebrecht, Assistant County Attorney, for appellee State.
Considered en banc.
TERNUS, Justice.
The appellant, M.T., was involuntarily committed after a court hearing at which he was not present. On appeal, he claims that his statutory and constitutional right to be present at the hearing was violated. At oral argument, M.T.'s attorney stated that respondent does not request a remand for another hearing because M.T. has since been released from inpatient treatment and has returned to his home.
Despite the fact that this court's decision will have no effect in the underlying matter, we conclude that this case falls within an exception to the mootness doctrine. On the merits of M.T.'s appeal, we hold that his statutory right to procedural due process was violated.

I. Background Facts and Proceedings.

M.T. has a long history of paranoid schizophrenia. At a 1994 commitment proceeding he was ordered by the court to have outpatient treatment. This treatment consisted of regular injections of Prolixin Decanoate. When M.T. stopped taking his medication in February of 2000, his condition deteriorated.
On May 8, 2000, an application for involuntary commitment was filed in the district court alleging that M.T. was mentally impaired and believed to be a danger to himself and to others. See Iowa Code § 229.6 (1999) (setting forth procedure for commencement of involuntary commitment *704 proceeding). At the time, he was being held at the Veteran's Administration Medical Center (VAMC) in Knoxville, Iowa. The application revealed that since his admission to VAMC, M.T. had shown increased agitation and anger, and frequently required seclusion and restraints.
M.T. did not attend the commitment hearing, which was held on May 15, 2000. The State called a nurse practitioner, Mary Walker, as a witness who testified that M.T. had been placed in restraints the morning of the hearing because he had become agitated, and was threatening and screaming at staff members. As a result of M.T.'s condition, the VAMC staff was concerned about safely transporting him to the hearing.
Walker testified she called M.T.'s attorney on the morning of the hearing and informed her of the situation. (M.T. had court-appointed counsel in the district court who is not the same attorney representing M.T. on appeal.) M.T.'s counsel was not able to talk with him, however, because the staff believed it would be dangerous to let M.T. out of the restraints so as to have access to the phone. There was some discussion of obtaining a cell phone to allow the attorney to talk with M.T., but this was not done. Apparently, the staff believed that such a conversation would only agitate M.T. even more. Walker confirmed, however, that if M.T. had been at the hearing, he would have said that he did not want to be committed.
The State called no other witnesses, but offered a physician's report stating that M.T. was suffering from a mental illness, was incapable of making responsible decisions concerning his treatment, and was a danger to himself or others if not involuntarily committed on an inpatient basis. The report also corroborated Walker's testimony concerning M.T.'s state since being admitted to VAMC.
M.T.'s counsel called no witnesses and submitted no evidence in rebuttal to the State's case. Counsel confirmed Walker's testimony with respect to their telephone conversation that morning.
The court did not postpone the hearing, nor did the court make any further inquiry concerning M.T.'s ability to be present at and participate in the hearing. On the basis of the State's evidence, the court found that M.T. was seriously mentally impaired and ordered his commitment at the VAMC for purposes of evaluation and treatment. On June 22, 2000, M.T.'s commitment was changed from inpatient to outpatient status.

II. Is this Appeal Moot?

An appeal "`is moot if it no longer presents a justiciable controversy because [the contested issue] has become academic or nonexistent.'" In re Interest of D.C.V., 569 N.W.2d 489, 494 (Iowa 1997) (quoting In re Meek, 236 N.W.2d 284, 288 (Iowa 1975)). "The test is whether the court's opinion would be of force or effect in the underlying controversy." Id.; see also Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d 537, 540 (Iowa 1997). As a general rule, we will dismiss an appeal "`when judgment, if rendered, will have no practical legal effect upon the existing controversy.'" Christensen v. Iowa Dist. Ct., 578 N.W.2d 675, 679 (Iowa 1998) (quoting Roth v. Reagen, 422 N.W.2d 464, 466 (Iowa 1988)).
There is an exception to this general rule, however, "where matters of public importance are presented and the problem is likely to recur." Iowa Freedom of Info. Council v. Wifvat, 328 N.W.2d 920, 922 (Iowa 1983). Under these circumstances, our court has discretion to hear the appeal. See Christensen, 578 N.W.2d at 679. An important factor to consider is *705 "whether the challenged action `is such that often the matter will be moot before it can reach an appellate court.'" Id. (quoting Danner v. Hass, 257 Iowa 654, 660, 134 N.W.2d 534, 539 (1965), overruled on other grounds by Needles v. Kelley, 261 Iowa 815, 822, 156 N.W.2d 276, 280 (1968)).
We think the present appeal is moot. M.T. is no longer subject to the inpatient treatment order that resulted from the challenged hearing. Moreover, he does not contest his commitment to outpatient treatment. Any ruling in this case will not affect his current commitment order under these circumstances. Although we could remand the matter for another hearing, such an order would have no effect because the State no longer seeks to have M.T. committed for inpatient treatment. In any event, M.T. no longer wants a new hearing.
Despite the mootness of the present appeal, we will exercise our discretion to reach the merits of the issue raised by the appellant. The conduct of an involuntary civil commitment hearing is of public importance. Because such hearings are a daily occurrence, questions about the proper procedures to be followed when there is a question about the committee's ability to be present are likely to reoccur. Additionally, given the time for processing an appeal, and the probability that the commitment will not continue for that length of time, such appeals will often be moot before the appeal can be decided. See Tyars v. Finner, 709 F.2d 1274, 1280 (9th Cir. 1983) (holding court would review case despite appellant's discharge from hospital because involuntary civil commitments "`do not last long enough for complete judicial review of the controversies they engender'" (quoting Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 126, 94 S.Ct. 1694, 1700, 40 L.Ed.2d 1, 10 (1974))); In re Barbara H., 183 Ill.2d 482, 490, 234 Ill. Dec. 215, 702 N.E.2d 555, 559 (1998) (same). Therefore, we proceed to the merits of M.T.'s complaint.
III. Were M.T.'s Procedural Due Process Rights Violated?
M.T. contends that the district court violated his right to be present at the involuntary commitment proceeding by not following the proper procedures to determine whether M.T. should be allowed to exercise this right. Iowa Code section 229.12 provides that "[t]he respondent has the right to be present at the hearing." Nonetheless, under the Supreme Court's Rules for Involuntary Hospitalization of Mentally Ill, the judge or mental health referee may determine that the respondent's presence is not in his or her best interests. Rule 20 provides in pertinent part:
The respondent must be present at the hearing unless prior to the hearing the respondent's attorney stipulates in writing to respondent's absence, such stipulation to state (1) that the attorney has conversed with the respondent, (2) that in the attorney's judgment the respondent can make no meaningful contribution to the hearing, and (3) the basis for such conclusions. A stipulation to the respondent's absence shall be reviewed by the judge or referee before the hearing, and may be rejected if it appears that insufficient grounds are stated or that the respondent's interests would not be served by the respondent's absence.
Iowa Sup.Ct.R. for Involuntary Hospitalization of Mentally Ill 20. M.T. does not claim that this rule is constitutionally infirm. Therefore, we limit our discussion to the alleged violation of M.T.'s statutory due process rights.
*706 Upon our review of the record, we conclude that M.T.'s statutory rights were violated in numerous respects. The written stipulation of M.T.'s attorney required by rule 20 was not filed. Indeed, based on the evidence presented at the hearing, such a stipulation could not have been filed because M.T.'s attorney had not conversed with the respondent, by phone or in person, a necessary predicate to filing the stipulation. Even assuming the oral record made at the hearing substantially complied with the stipulation requirement, which it did not, the judge was still required by rule 20 to make an independent determination (1) of the adequacy of the grounds for the attorney's conclusion that the respondent could not meaningfully contribute to the hearing; and (2) whether the respondent's interests would, in fact, be advanced by his absence. See id. Such a determination must be made before proceeding with the hearing. In the present case, the hearing was conducted without any initial inquiry into the respondent's absence, and there is nothing in the record to indicate that the judge ever made the determination required by rule 20. Clearly, M.T. was not accorded the statutory due process to which he was entitled.
We do not question the good intentions of M.T.'s trial counsel or of the judge who accepted the conclusion of those involved that it would not be in M.T.'s best interests to attend the hearing. Nevertheless, a respondent's liberty interests are at stake at an involuntary commitment hearing. See Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330-31 (1979) (holding that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); In re R.P., 606 N.W.2d 15, 17 (Iowa 2000) (same). Therefore, it is imperative that the statutory requirements and procedures be followed. Cf. Suzuki v. Quisenberry, 411 F.Supp. 1113, 1129-30 (D.Haw.1976) (detailing various circumstances under which committee may be excluded from hearing and requiring court inquiry and approval, as well as exploration of alternatives to total exclusion); Doremus v. Farrell, 407 F.Supp. 509, 515 (D.Neb.1975) ("The subject has a constitutional right to be present at the hearing unless he voluntarily, intelligently and knowingly waives it or his counsel waives it for him after a showing that he is incompetent, or the subject's conduct is so disruptive as to require his exclusion."); In re Watson, 91 Cal.App.3d 455, 456, 154 Cal.Rptr. 151, 155 (1979) (holding denial of committee's right to be present at hearing "absent an on-the-record showing that she waived that right or was incapable of doing so by reason of either physical or mental incapacity, deprived her of her fundamental constitutional right to due process of law"); Greene v. State, 537 S.W.2d 100, 102 (Tex.Civ.App.1976) ("Due process requires the presence of the person proposed to be involuntarily committed at all judicial proceedings conducted for that purpose, unless the right has been knowingly and intelligently waived by such person or by adversary counsel acting in her behalf and for good cause shown." (Citation omitted.)).

IV. Disposition.

We hold that the respondent's rights under rule 20 were violated. Although we reverse, we do not remand for a proper determination as to whether M.T. should be present at the commitment hearing since M.T. is no longer subject to an inpatient order and does not challenge his commitment for outpatient treatment.
REVERSED.