**IN THE COURT OF APPEALS OF IOWA**

No. 15-2213
Filed October 12, 2016

**IN THE MATTER OF M.W.,**
Alleged to Be Seriously Mentally Impaired,

**M.W.,**
　　　　Respondent-Appellant.
_____

　　　　Appeal from the Iowa District Court for Johnson County, Christine Boyer,

Judicial Hospitalization Referee.


　　　　M.W. appeals the judicial hospitalization referee's finding he was seriously

mentally impaired.　**ORDER VACATED.**


　　　　Willie E. Townsend, Coralville, for appellant.

　　　　Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant

Attorney General, for appellee State.


　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

M.W. appeals the judicial hospitalization referee's finding he was seriously mentally impaired under Iowa Code chapter 229 (2015). He contends (1) the hospitalization referee erred by failing to grant his motion to continue when his guardian[1] had not received notice of the proceedings, (2) the delay between his appeal to the district court and the scheduled hearing was unduly long and violated his rights to an appeal of his hospitalization order, and (3) the evidence was insufficient to find him seriously mentally impaired. The State raises questions of jurisdiction and mootness.

Because the referee's order of commitment was a final appealable order, we have jurisdiction to entertain this appeal. And although the district court released M.W. from the order of involuntary hospitalization at the request of the applicant, we find exceptions to the mootness doctrine allow us to reach the merits of M.W.'s appeal. We hold M.W.'s guardian was entitled to notice of the commitment proceedings and vacate the referee's order.

## I. Facts and Prior Proceedings

On December 4, 2015, M.W. left his placement at the Chatham Oaks residential care facility and walked three miles, in shorts despite freezing temperatures, to the University of Iowa Hospitals and Clinics (UIHC) emergency room, where he was admitted. That same day, a UIHC psychiatrist who was familiar with M.W. from several previous admissions to the hospital, filed an application to have M.W. involuntarily hospitalized. The psychiatrist supported his application with the following statement:

---

[1] M.W.'s legal guardian is his mother.

**I believe the respondent to be seriously mentally impaired as defined by the statute, for the following reasons: Patient has long history of hospitalization at our facility for Autism Spectrum D/O and severe OCD behaviors which make it impossible for him to care for himself in an independent living environment. His mother and guardian is also incapable of caring for him at home. He recently went to Chatham Oaks as an alternate housing facility but made several attempts to return to UIHC for hospitalization for irrational reasons. He is now hospitalized but refusing medications and noncompliant with treatment, and based on my exposure to him for almost two years, he will likely quickly devolve to severe OCD behaviors, isolating himself in his room, and he has been quite violent in the past when not controlled on medications. Off medications, he becomes very rigid about interacting with others and complying with unit rules and has attacked other patients and staff in the past off medications.**

The district court scheduled a hearing with the judicial hospitalization referee for December 8. Although the hospital had the contact information of M.W.'s legal guardian, neither the hospital nor the court notified her of the proceedings.

Unsurprisingly, the guardian did not attend the December 8 hearing. M.W. requested a continuance, but the referee denied the motion, reasoning the doctor had "indicated that [M.W.] was becoming more aggressive and that even a short continuance could prove a problem." The parties proceeded with the hearing, and the referee found M.W. to be seriously mentally impaired. The referee required M.W. to undergo a complete psychiatric evaluation and appropriate treatment at UIHC.

That same day, M.W. appealed to the district court and requested the court grant his motion to continue, require the guardian to be served with notice, and order rehearing of the matter before the referee. On December 9, the district court held a hearing to consider M.W.'s appeal. The court declined to remand

the case to the referee for another hearing and noted the referee's denial of M.W.'s motion to continue was not an abuse of discretion because chapter 229 does not require notice to a guardian. The court also scheduled a de novo trial for December 22, reserving for M.W. "the right to challenge this ruling denying remand back to the referee as well as [M.W.'s] right to challenge all rulings of the referee at an appeal hearing on the record before the district court."

On December 18, the district court dismissed the case upon UIHC's request. Three days later, M.W. filed a withdrawal of his appeal, which also stated his intention to "continue at the appellate court level." When the parties did not appear for the December 22 hearing, the district court noted it would take no further action in the matter. On December 23, M.W. appealed to the Iowa Supreme Court, challenging the referee's December 8 order.[2]

On its own motion, the Iowa Supreme Court issued an order on February 29, 2016, stating it was "concerned as to whether it has jurisdiction" over the appeal and asking the parties to file statements addressing the jurisdictional question. After receiving the parties' statements, the supreme court concluded the appeal should proceed to briefing, but the parties were to "further develop and present their arguments in their briefs regarding this court's jurisdiction to hear this appeal as well as whether the appeal should be

---

[2] M.W. also appealed the district court's December 9 order rejecting his challenge to the referee's refusal to continue the hospitalization hearing to allow his legal guardian to be served notice. Although M.W. himself requested the district court review the hospitalization referee's ruling, he now urges us to disregard the district court's order on the grounds the court acted outside the scope of its authority. Because M.W.'s appellate brief does not ask us to take any action on the district court's order, we decline to consider its authority to review the actions of a hospitalization referee under chapter 229.

dismissed as moot."  On July 6, 2016, the supreme court transferred the appeal to our court.

## II.    Jurisdiction

The right to appeal "is purely statutory and may be granted or denied by the legislature as it determines."  *Boomhower v. Cerro Gordo Cty. Bd. of Adjustment*, 163 N.W.2d 75, 76 (Iowa 1968) (citation omitted).  Iowa's appellate courts have jurisdiction to review "[a]ll final orders and judgments of the district court involving the merits or materially affecting the final decision."  Iowa R. App. P. 6.103(1).

The State contends we lack jurisdiction because the referee's finding that M.W. was seriously mentally impaired was not a final order.  Citing Iowa Code section 229.21(3), the State argues the referee's finding must first be appealed to the district court, a process M.W. began but then abandoned.  *See* Iowa Code § 229.21(3)(a) (stating respondent "may appeal from the . . . referee's finding to a judge of the district court by giving the clerk notice in writing, within ten days after" the referee's finding).  The State argues the statute includes no basis "for the respondent by-passing the district court and proceeding directly to the appellate court."

M.W. relies on *In re Melodie L.* in contending he was not required to appeal to the district court before seeking review from the appellate courts.  *See* 591 N.W.2d 4, 7 (Iowa 1999) (holding applicant may directly appeal a hospitalization referee's decision to the supreme court).  M.W. reasons that because a referee's dismissal is a final order under *Melodie L.*, a referee's order for commitment must also be final.  We agree with M.W. that *Melodie L.* governs

this matter and conclude that while our legislature provided respondents the opportunity to secure a de novo review of a judicial hospitalization referee's order in the district court in section 229.21(3), a respondent is not required to obtain that review before seeking relief in the appellate courts. *See In re E.R.*, No. 09-0922, 2010 WL 1377009, at *2 (Iowa Ct. App. Apr. 8, 2010) ("Thus, an applicant, and by extension a respondent, may directly appeal a referee's order to the supreme court."); *cf. In re Guardianship of B.J.P.*, 613 N.W.2d 670, 673 (Iowa 2000) (relying in part on *In re Melodie L.* in holding the order of an associate probate judge terminating a guardianship constituted a final decision); *In re D.W.K.*, 365 N.W.2d 32, 33–34 (Iowa 1985) (holding a juvenile court referee had concurrent jurisdiction to issue a final decision despite the fact that the governing statute allowed for juvenile court review). Therefore, we have jurisdiction to consider this matter.

### III. Mootness

An appeal is moot if the contested "issue becomes nonexistent or academic, and, consequently, no longer involves a justiciable controversy." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013) (citation omitted). Ordinarily, we will not consider moot issues because our decision will have no practical effect on the underlying matter. *See In re M.T.*, 625 N.W.2d 702, 704 (Iowa 2001). But there are exceptions to this rule. We have recognized two exceptions in the context of involuntary commitment proceedings that are relevant to this appeal. First, we may review an otherwise moot appeal when the issue is of great public importance, and it is likely to reoccur yet evade appellate review. *See id.* at 704–05. Second, we may review an issue when the "judgment left standing will cause

the appellant to suffer continuing adverse collateral consequences." *In re B.B.*, 826 N.W.2d at 429.

The State argues this appeal is moot because the district court dismissed the commitment proceedings against M.W., and it contends none of the exceptions to the mootness doctrine apply. The State reasons the issue of guardian notification does not evade review because had M.W. followed through with his appeal to the district court and received an unsatisfactory ruling, that order could have been appealed to the supreme court. The State also contests the collateral-consequences exception to the mootness doctrine, claiming M.W.'s involuntary commitment would "not create the collateral consequences contemplated by *In re B.B.*"

We agree that M.W.'s appeal is moot. M.W. is no longer subject to the involuntary hospitalization order he appeals. Further, a remand would be meaningless because the State no longer seeks to have M.W. involuntarily committed. *See In re M.T.*, 625 N.W.2d at 705. But we find exceptions to the mootness doctrine permit us to reach the merits of this appeal.

The issue of whether a guardian is entitled to notice of commitment proceedings involving a ward is one of considerable importance, and it is an issue that is likely to arise relatively frequently in involuntary commitment proceedings. In *M.T.*, the Iowa Supreme Court reached the merits of a moot appeal to consider whether a respondent's statutory rights were violated when he was prohibited from attending his own involuntary commitment hearing. *Id.* at 703. The court reasoned: "The conduct of an involuntary civil commitment hearing is of public importance. Because such hearings are a daily occurrence,

questions about the proper procedures to be followed when there is a question about the committee's ability to be present are likely to reoccur." *Id.* at 705; *see also In re T.S.*, 705 N.W.2d 498, 502 (Iowa 2005) (adopting *M.T.*'s reasoning to consider whether a county attorney who is not the applicant may participate in an involuntary commitment proceeding for substance abuse under Iowa Code chapter 125). We find the present appeal is of similar significance. We reject the State's contention that this issue does not evade appellate review. As the *M.T.* court noted, "given the time for processing an appeal, and the probability that the commitment will not continue for that length of time, such appeals will often be moot before the appeal can be decided." 625 N.W.2d at 705.

Further, we find M.W.'s appeal reviewable under the collateral-consequences exception. In adopting this exception to the mootness doctrine, our supreme court cited several adverse consequences to an individual who has been committed, including social stigma and "the potential to use one's involuntary commitment as evidence in future proceedings." *See In re B.B.*, 826 N.W.2d at 429–30. The court held "a party who has been adjudicated seriously mentally impaired and involuntarily committed is presumed to suffer collateral consequences justifying appellate review" but also indicated an applicant could rebut that presumption through a showing of "some number of prior involuntary commitment orders." *See id.* at 429, 431–32 (citation omitted). The State does not proffer any evidence M.W. had been involuntarily committed previously and states only that M.W. had previously been hospitalized for an extended period, had a "history of aggression," and had an appointed guardian. The State has failed to rebut the presumption M.W. will suffer the adverse collateral

consequences outlined in *B.B.* due to the involuntary commitment order. Therefore, we exercise our discretion to reach the merits of M.W.'s appeal.

## IV.    Notice to Guardian

M.W. argues his guardian was entitled to notice of the involuntary hospitalization proceedings against him, and the referee erred in failing to continue the hearing to allow the guardian to be served notice.  Iowa Code section 229.7 requires only that notice of an application for order of involuntary hospitalization be provided to the respondent.  *See also* Iowa Ct. R. 12.3.  But Iowa Rule of Civil Procedure 1.305(3) requires service upon "any person adjudged incompetent but not confined in a state hospital for the mentally ill" to be made by serving the guardian.  "[T]he purpose of requiring original notice be served on the guardian is not only that he be given opportunity to appear and defend, but to insure to the court itself a full and fair disclosure of the case it must decide and to protect the interest of the ward."  *Conklin v. Conklin*, 132 N.W.2d 459, 461 (Iowa 1965).

Although conceding the guardian *should* have been notified of the involuntary hospitalization proceeding, the State argues service upon M.W.'s guardian was not required under rule 1.305(3) because UIHC, "a publically funded hospital that provides psychiatric care," meets the definition of "state hospital for the mentally ill."  M.W. disagrees, contending he was not "confined" because he was not subject to an order of commitment before the proceedings at issue.  M.W. acknowledges a limited exception to the notice requirement for "[e]mergency and life threatening situations" but denies his situation falls within that exception.

We find M.W.'s guardian was entitled to notice under these circumstances. In construing Iowa Rule of Civil Procedure 1.305(3), we look to the plain and ordinary meaning of the language. *In re T.S.*, 705 N.W.2d at 502. The rule specifies notice to the guardian is required unless M.W. was confined at a state hospital for the mentally ill. Regardless of whether UIHC is a state hospital for the mentally ill, at the time the application for involuntary hospitalization was filed, M.W. was not "confined" at UIHC. *See Confine*, *American Heritage College Dictionary* (3d ed. 1993) ("1. To keep within bounds, restrict. 2. To shut or keep in, esp. to imprison."). Rather, he was present in the hospital by his own volition.

Nor do we find any "emergency exception" to the notice requirement. In the event of an emergency, an applicant may request the respondent to be taken into custody immediately, but this does not negate the requirement the guardian be notified of the hospitalization proceeding. *See* Iowa Code § 229.11(1)(b) (allowing respondent to be taken into custody immediately and detained in a hospital where chief medical officer "may provide treatment which is necessary to preserve the respondent's life, or to appropriately control behavior by the respondent which is likely to result in physical injury to the respondent or to others if allowed to continue").

Therefore, we find M.W.'s guardian was entitled to notice of the involuntary hospitalization proceedings.

## V.     Remedy

A violation of rule 1.305(3) does not, in all situations, require a reversal. It makes the referee's order voidable but not void. *See Conklin*, 132 N.W.2d at

461. "The effect of incompetency is to render the judgment subject to attack, provided a prima-facie defense to the action is shown to have existed." *Id.* We find M.W. has met that burden here.

The UIHC doctor who initiated the involuntary hospitalization proceeding did so because M.W. was "refusing medications and noncompliant with treatment." But the subsequent events—including the change in medical providers and course of treatment consistent with the wishes of the guardian and dismissal of the continuing commitment—suggest that, had the guardian received notice of the proceedings and appeared with the ward, the result might have been different.[3]

Accordingly, we vacate the referee's involuntary hospitalization order, but we do not remand because M.W. is no longer subject to the order.[4] *See In re M.T.*, 625 N.W.2d at 706.

**ORDER VACATED.**

---

[3] The Iowa Code defines "serious mental impairment" as a person (1) with mental illness (2) who lacks "sufficient judgment to make responsible decisions with respect to his or her hospitalization or treatment" and (3) is "likely, if allowed to remain at liberty, to inflict physical injury on himself or others or to inflict emotional injury on the designated class of persons." *In re B.B.*, 826 N.W.2d at 432 (citations omitted); *see also* Iowa Code § 229.1(17). In an affidavit filed with the district court, the guardian attributed the filing of the application for involuntary hospitalization to the UIHC doctor's desire "to treat [M.W.] with Prozac." She noted M.W. "had been treated with Prozac in the past resulting in the steady escalation of agitated behavior which only ceased when the drug was discontinued. The results this time under the commitment were identical." The affidavit of the guardian—whose duty is to "ensur[e] the ward receives professional care, counseling, treatment, or services as needed"—suggests her presence at the proceeding would have assisted M.W. in contesting the second prong of the definition. *See* Iowa Code § 633.635.

[4] Because we vacate the order based on the issue of notice to M.W.'s guardian, we decline to consider M.W.'s challenge to the referee's finding of serious mental impairment. In addition, we decline to reach M.W.'s complaint that the delay between his appeal to the district court and the scheduled hearing was unduly long because he fails to ask for a specific remedy and fails to cite authority in support of his contention. *See* Iowa R. App. P. 6.903(2)(g)(3).