## IN THE COURT OF APPEALS OF IOWA

No. 16-1156
Filed March 22, 2017

IN THE MATTER OF M.A.,
Alleged to be Seriously Mentally Impaired,

M.A.,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Respondent appeals from a district court's order of involuntary commitment. **VACATED AND REMANDED.**

J. Andrew Cederdahl, Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

M.A. appeals from the district court's order of involuntary commitment. He argues (1) the district court in Black Hawk County did not have subject matter jurisdiction because M.A. resided in and was located in a different county, (2) there was not substantial evidence M.A. was a legitimate threat to others, and (3) the applicant claiming the need for the commitment proceedings had insufficient knowledge upon which the court could base its ruling. Finding the first issue dispositive, we vacate and remand.

## I.       Backgrounds Facts and Proceedings

M.A.'s mother filed an application with the Black Hawk County Clerk of Court alleging M.A. was seriously mentally impaired. M.A.'s ex-wife filed the supporting affidavit, which stated M.A. resided in Black Hawk County but did not identify a street or city. The application and affidavit both asserted M.A. suffered from a mental illness and had made threats of harm on Facebook directed at people in Black Hawk County. Based on the application and the affidavit, the district court entered an order for immediate custody to have M.A. detained at Covenant Hospital in Waterloo. On May 20, 2016, M.A. was found by police in Cedar Rapids and was transported to a location where an officer of the Black Hawk County Sheriff's Office took custody of M.A. and delivered him to Covenant Hospital. On May 25, a hospitalization referee held a hearing. At the commencement of M.A.'s testimony, he told the court he lived in Cedar Rapids and had for two years. During his attorney's direct examination of him, this exchange occurred:

Q. Because they don't live with you? A. No. But you—(inaudible) and another thing on the affidavit it says Black Hawk County. I live in Linn County. How you going to take a commitment—

Q. All right. Let's try to answer my question. Okay.

After hearing all the testimony, the referee ordered M.A. committed for an inpatient psychiatric evaluation and treatment at Covenant Hospital.[1]

M.A. filed a written notice of appeal of the referee's decision, which recited he lived in Cedar Rapids and was apprehended in Linn County and transported to Black Hawk County. The notice also stated: "Committal orders['] jurisdiction are just county wide." The appeal hearing was held on May 31. The record at the district court shows M.A. questioned how the court could proceed when he was a resident of Linn County and was taken into custody in Linn County. This exchange occurred during the court's lengthy direct examination of M.A.:

[M.A.]: Your Honor, I had no intentions on coming back to Waterloo. They came down to Linn County and got me. What is the jurisdiction on committals? I had no intentions on coming to Black Hawk County because I was like I am so fed up with it.

THE COURT: No, but if you're making threats against people in Black Hawk County, that gives Black Hawk County concern.

[M.A.]: That gives you criminal jurisdiction, but not in regards to a committal.

THE COURT: Let's agree to disagree on that.

Without expressly overruling M.A.'s objection to "jurisdiction," the court implicitly, but clearly, ruled it would proceed to decide the case because M.A. had made threats against people in Black Hawk County. After conducting its own examination of the applicant and M.A., and without examination of either the

---

[1] M.A. had been the subject of a mental-health proceeding before the same referee previously, apparently when he resided in Black Hawk County.

applicant or M.A. by either counsel, the district court affirmed the ruling of the referee and ordered M.A. to outpatient treatment.

## II.     Standard of Review

Questions of jurisdiction, authority, and venue are reviewed for correction of errors at law. *In re Marriage of Engler*, 532 N.W.2d 747, 748 (Iowa 1995). "We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013).

## III.     Analysis

M.A. argues the district court in Black Hawk County did not have subject matter jurisdiction. The State agrees subject matter jurisdiction may be raised at any time but argues any challenge as to venue was waived and not preserved for appeal because venue was not challenged at the district court. Although M.A. did not use the word "venue" when he appeared before the referee and the district court—and continues to argue jurisdiction, not venue, on appeal—M.A. attempted to question his own attorney on how the referee was going to order a commitment of him when he lived in Linn County, but his attorney interrupted in the midst of M.A.'s attempt. At the district court hearing, M.A. directly asked the court about jurisdiction on "committals." Although not artfully raised by M.A., the court understood M.A.'s challenge and responded in a way to silence M.A. from further inquiry. M.A. clearly attempted to challenge the district court's authority to hear the case in Black Hawk County. He specifically challenged jurisdiction on

the basis he lived in Linn County and was transported from Linn County to Black Hawk County for the initial commitment proceedings.

"[S]ubject matter jurisdiction ordinarily means the power to hear and determine cases of the general class to which the proceedings in question belong, not merely the particular case then occupying the attention of the court." *Wederath v. Brant*, 287 N.W.2d 591, 594 (Iowa 1980). "The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate, and juvenile, except in cases where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body." Iowa Code § 602.6101 (2016); *see also* Iowa Const. art. V, § 6. "The legislature may prescribe regulations for the manner in which the jurisdiction is exercised, but it cannot limit the court's jurisdiction." *Schott v. Schott*, 744 N.W.2d 85, 88 (Iowa 2008) (citation omitted).

There is a "distinction between jurisdiction and authority." *In re Marriage of Rathe*, 521 N.W.2d 748, 750 (Iowa 1994). And there has long been confusion over that distinction. *See Schrier v. State*, 573 N.W.2d 242, 244 (Iowa 1997). "A court may have subject matter jurisdiction but for one reason or another may not be able to entertain a particular case." *State v. Mandicino*, 509 N.W.2d 481, 482 (Iowa 1993) (citation omitted). "In such a situation we say the court lacks authority to hear that particular case." *Id.* (citation omitted). An order entered by a district court having jurisdiction but without authority is voidable but is not void. *In re Estate of Falck*, 672 N.W.2d 785, 790–91 (Iowa 2003). A challenge to venue may be characterized as a challenge to a court's authority. *See, e.g.*,

*Rathe*, 521 N.W.2d at 750. "Venue is a matter of proper situs, not jurisdiction. The remedy for bringing an action in an improper county is not dismissal, but change to a proper county under [now] rule of civil procedure [1.808]." *Id.* at 749. "[W]here subject matter jurisdiction exists, an impediment to a court's *authority* can be obviated by consent, waiver or estoppel." *Mandicino*, 509 N.W.2d at 483.

"Proceedings for the involuntary hospitalization of an individual pursuant to this chapter . . . may be commenced by any interested person by filing a verified application with the clerk of the district court of the county where the respondent is presently located, or which is the respondent's place of residence." Iowa Code § 229.6(1). "Venue for hospitalization proceedings shall be in the county where the respondent is found . . . ." *Id.* § 229.44(1). The hospitalization hearing "shall be held in the county where the application was filed unless the judge or referee finds that the best interests of the respondent would be served by transferring the proceedings to a different location." Iowa Ct. R. 12.15. Iowa Code section 229.44(2) provides the court may transfer venue after entry of an order pursuant to section 229.13 (evaluation order) or 229.14 (following report of chief medical officer), "[w]hen it appears that the best interests of the respondent or the convenience of the parties will be served by a transfer . . . to the court of the county of the respondent's residence" or "where the respondent is found."

The question before us is: Did M.A.'s written notice of appeal and his questioning of the district court's jurisdiction preserve the issues of jurisdiction, venue, and authority for appeal? Framed differently, can his questioning of jurisdiction be characterized as "consent, waiver or estoppel" to limit his right to

challenge the district court's authority in this appeal? Because "a respondent's liberty interests are at stake [in] an involuntary commitment hearing," due process requires "that the statutory requirements and procedures be followed." *In re M.T.*, 625 N.W.2d 702, 706 (Iowa 2001). At the very least, we find M.A. did not consent, waive, or do anything that should estop him in this appeal from challenging the district court's authority at the hospitalization hearing. Although M.A. did not make a specific motion for change of venue, the district court clearly understood his challenge. Given the historical confusion over jurisdiction, venue, and authority, we find M.A.'s challenge was sufficient to put the court and the State on notice,[2] thus preserving the issues of jurisdiction, venue, and authority for our review.

Based on the legal principles set forth above, an involuntary-commitment proceeding is within the classification of cases identified in the Iowa Code as within the "exclusive, general and original jurisdiction" of the district court. Iowa Code § 602.6101. The directive of section 229.6 to file the action where the respondent is located or resides is a legislative "regulation[] for the manner in which jurisdiction is [to be] exercised," *Schott*, 744 N.W.2d at 88 (citation omitted), but is not a limitation on subject matter jurisdiction. The regulatory directive of section 229.6 is a venue limitation. The application and affidavit filed in this case pursuant to section 229.6 were sufficient to invoke the Black Hawk County District Court's subject matter jurisdiction. The hearing was required to "be held in the county where the application was filed unless the judge or referee

---

[2] "The respondent's welfare shall be paramount and the hearing shall be conducted in as informal a manner as may be consistent with orderly procedure, but consistent therewith the issue shall be tried as a civil matter." Iowa Code § 229.12(3)(a).

[found] that the best interests of the respondent would be served by transferring the proceedings to a different location." Iowa Ct. R. 12.15.

The next question is whether the Black Hawk County District Court was the proper venue. Although the affidavit filed in the commencement of this proceeding asserted M.A. resided in Black Hawk County, the undisputed evidence showed he resided in Linn County at the time these proceedings were commenced and he was located in Linn County when he was taken into custody for these proceedings. The State argues that because he was "found" in Black Hawk County at the time of the hearing, that county was the appropriate venue under section 229.44(1), which states "[v]enue for hospitalization proceedings shall be in the county where the respondent is found." *See also* Iowa Ct. R. 12.15. The only reason M.A. was "found" in Black Hawk County at the time of the commitment proceedings is because an incorrect residency allegation in the affidavit supporting the application was sufficient to file the application and obtain an order for custody, resulting in M.A. being taken into custody in Linn County and then transported to Black Hawk County. If we were to accept the State's argument, a chapter 229 proceeding could be commenced in any county so long as the respondent was subsequently transported by the authorities to the county where the action was filed, and the respondent could not then challenge the venue or the authority of the court in the county to which the respondent was forcibly transported.[3]

---

[3] *But see* Iowa Code § 229.44(2) (providing for change of venue after entry of an order pursuant to section 229.13 (evaluation order) or section 229.14 (following report of chief medical officer)).

When read together, Iowa Code sections 229.6(1), 229.44(1) and (2), and Iowa Court Rule 12.15 make it clear the legislature and the courts require an involuntary-commitment proceeding to be commenced either where the respondent lives or where the respondent is found at the time the application is filed. No other construction of the place of commencement of the proceedings makes sense. Venue for hospitalization hearings is where the respondent is found. Iowa Code § 229.44(1). But the location where the respondent is found presumes the application was filed in either the county where the respondent lived or where he was found at the time the proceedings were commenced. In other words, the initial commitment hearing is to be held where the application was filed (i.e., where the respondent lives or is found), "unless the judge or referee finds that the best interests of the respondent would be served by transferring the proceedings to a different location." Iowa Ct. R. 12.15.

When M.A. raised the issues at the hearing before the referee, his attorney ignored the issue, and the referee never considered it. When M.A. raised the issue before the district court in writing in his notice of appeal and during his testimony, the court ruled Black Hawk County was the appropriate venue because the alleged threats were made against persons in Black Hawk County. That ruling had no basis in law and was in error. Although we have determined the application and affidavit were sufficient to invoke jurisdiction, upon proof M.A. was neither found in Black Hawk County nor resided there at the time the application and affidavit were filed, the hospitalization referee or the district court should have transferred the proceedings to Linn County, where M.A.

was found and resided.  *See* Iowa Ct. R. 12.15.  The district court sitting in Black Hawk County did not have authority to order the involuntary commitment of M.A. The order is not void but is voidable.

We vacate the order of commitment entered by the district court in Black Hawk County and remand for an order to change venue of this case to Linn County.

**VACATED AND REMANDED.**