No. 121,108

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ALMARIO V. CHALMERS,
*Appellant*,

v.

BRITTANY BURROUGH,
*Appellee*.

SYLLABUS BY THE COURT

1.

The Kansas Legislature—and other state legislatures—enacted the Uniform Interstate Family Support Act (UIFSA) to establish a uniform, nationwide procedure for issuing, modifying, and enforcing child and spousal support.

2.

UIFSA was adopted to prevent the issuance of multiple support orders by different jurisdictions as families move between and interact with different states. To prevent the issuance of overlapping or conflicting orders, UIFSA establishes a one-order system whereby all states that have adopted UIFSA recognize and enforce the same obligation consistently. The goal of this uniform structure is to ensure that only one valid support order may be effective at one time.

3.

UIFSA adopts the principle of continuing, exclusive jurisdiction to establish and modify child support. Under this framework, Kansas courts may enforce out-of-state orders concerning child support at any time, as long as they have personal jurisdiction over the parties and the out-of-state order is properly registered according to the procedures set forth in the Act. But a Kansas court does not have jurisdiction to establish

1

or modify child-support obligations in a case originally filed in another state unless continuing, exclusive jurisdiction over that case is first transferred to Kansas.

4.

K.S.A. 2019 Supp. 23-36,611 includes various requirements that must be met before a Kansas court can modify another state's child-support order. That statute, however, only authorizes a court to modify such an order if it is first registered in this state.

5.

K.S.A. 2019 Supp. 23-36,602(a) sets forth the procedure for registering an out-of-state support order in Kansas under UIFSA and requires, among other things, that a party attach "two copies, including one certified copy, of the order to be registered, including any modification of the order."

6.

Whether the district court had subject-matter jurisdiction to hear the case is a question of law appellate courts review de novo.

7.

UIFSA's limitations on affirmative defenses only apply when someone is contesting the validity or enforcement of a registered order. Those limitations do not apply when someone is challenging the effectiveness of the underlying registration.

8.

Questions of subject-matter jurisdiction may be raised at any time, including by the court sua sponte. Unlike personal jurisdiction, which concerns the court's authority over the parties and may therefore be waived, subject-matter jurisdiction goes to the power of a court to hear and decide a case. Parties cannot bestow the power to hear a case

2

on a court when that authority does not otherwise exist, so subject-matter jurisdiction cannot be conferred by consent, waiver, or estoppel.

9.

Under UIFSA's procedural requirements, a Kansas court has no authority to modify child-support obligations in an out-of-state case until the out-of-state order is properly registered under K.S.A. 2019 Supp. 23-36,602. Until then, the original, issuing court has continuing, exclusive jurisdiction over the case. Thus, proper registration of an out-of-state order of child support is a jurisdictional prerequisite that must be satisfied before a Kansas court can take any action on that order.

10.

Though strict compliance is not necessary, a party still must substantially comply with UIFSA's registration requirements before a Kansas court can take any action concerning an out-of-state child-support order.

11.

The controlling out-of-state order is the focus of a modification or enforcement proceeding under UIFSA. Without a copy of that order, the district court cannot know its contours. A party who fails to attach the out-of-state order to his or her petition to register that order has not substantially complied with UIFSA's registration requirements.

Appeal from Sedgwick District Court; LINDA KIRBY, judge. Opinion filed July 31, 2020. Affirmed.

*Jeffrey N. Lowe*, of Lowe Law, LLC, and *Jessica F. Leavitt*, of Stinson, Lasswell & Wilson, LC, of Wichita, for appellant.

*Cheryl J. Roberts*, of Wichita, for appellee.

3

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

WARNER, J.: As families move from state to state, courts are often asked to enforce or modify child-support obligations that arose elsewhere. While it is important that courts have the ability to address these families' needs, that practice raises the possibility of overlapping or inconsistent child-support orders issued in different states. To solve this conundrum, legislatures in all 50 states have adopted the Uniform Interstate Family Support Act (UIFSA). Under UIFSA, only one state's courts have exclusive subject-matter jurisdiction over the parties' support obligations at a given time. To transfer that exclusive jurisdiction to a court in a different state, a party must register the order in the new state in accordance with UIFSA and then meet other procedural requirements.

In this case, Almario Chalmers attempted to register and then modify a Florida child-support order in Kansas (where his daughter and her mother live). The Kansas district court initially confirmed registration of the Florida order and modified Chalmers' child-support obligation. But it later set aside both orders and dismissed the case because Chalmers did not substantially comply with UIFSA's registration requirements. We affirm that dismissal, as the failure to properly register the order under UIFSA prevented the Kansas court from ever acquiring jurisdiction to hear the case.

FACTUAL AND PROCEDURAL BACKGROUND

A Florida district court ordered Chalmers to pay Brittany Burrough child support in 2015 for the care of their daughter. The amount of child support was based on Chalmers' income while he played basketball for the Miami Heat of the National Basketball Association. Chalmers retired from the NBA in November 2018 and moved out of Florida. Burrough and the child are Kansas residents.

4

Chalmers wanted to reduce his monthly child-support obligation after his change in employment, but he was no longer a Florida resident and could not do so in Florida. In October 2018, Chalmers filed a petition to register and modify the Florida child-support order in Kansas under UIFSA.

The petition to register the Florida order included its date and case name. It stated Chalmers was current with his child-support obligations and that there was no known arrearage. The petition also indicated that "Two (2) copies of the Child Support Order sought to be registered [were] included with this Petition, one of which is certified." But no copies of the Florida support order were actually attached to the petition.

Chalmers provided copies of this petition to Burrough, along with a "Notice of Registration of Support Order Under [UIFSA]." This notice included a paragraph titled "Automatic Confirmation," stating, "If you do not contest the validity or enforcement of the registered order within twenty (20) days, this order will automatically be confirmed by operation of law." Burrough did not contest the petition within 20 days of receiving these materials.

On the 20th day, Chalmers requested—and the district court entered—a journal entry registering the Florida order in Kansas. The journal entry stated, "By operation of the law, this Court accepts registration of *the attached Order* of the State of Florida, Miami-Dade County Judicial Circuit, Case Number 10-19606 . . . under the provisions of the Uniform Interstate Family Support Act (UIFSA)." (Emphasis added.) One week later, the district court temporarily modified Chalmers' support obligation "by agreement of the parties." The court ordered a hearing on Chalmers' request for permanent modification of his child-support obligation after the Thanksgiving holiday and noted that Burrough had failed to contest the validity of the Florida child-support order within the 20-day window.

On January 15, 2019, Burrough filed a motion to set aside the court's temporary order because Burrough had not agreed to it. Around the same time, Chalmers notified the court that he had mistakenly forgotten to include the Florida order with his petition for registration and moved for permission to amend his registration to include the Florida order.

The next day, Burrough filed a "Motion to Dismiss Case and Void Judgment Due to Lack of Jurisdiction and Lack of Subject Matter Jurisdiction." Burrough argued the Florida support order had never been registered because Chalmers did not comply with UIFSA's procedural requirements; since Chalmers had not attached the Florida order, the district court's confirmation and modification orders were void. She asked the court to "[d]ismiss this case for lack of jurisdiction because no Florida child support order(s) are registered." Burrough also alleged that Chalmers was still a resident of Florida. Chalmers filed a motion in opposition to Burrough's motion, claiming she was barred from raising the matter under K.S.A. 2019 Supp. 23-36,608 because she had not challenged the registration within 20 days of receiving notice it had been filed.

The district court dismissed Chalmers' registration of the Florida order as defective (because the out-of-state order had not been attached) and vacated its modification of his support obligation. In so ruling, the court rejected Chalmers' arguments that he had substantially complied with UIFSA's registration requirements and that the omission of the order was merely a clerical error. It explained:

> "This argument misses the real issue before the court, whether Chalmers has substantially complied with the requirements for presenting the orders of another state's court to the Kansas Court for enforcement. The Florida Child Support Order, itself, certified by the court of the issuing state, is the actual subject of the registration. The presence of the certified document is fundamental to such registration. Failure to include the order is more than a mere clerical error or excusable neglect, it is a critical element of the registration process."

6

Chalmers appeals.

DISCUSSION

Before the enactment of UIFSA, Kansas courts had jurisdiction "to establish, vacate, or modify" child-support orders "even when that obligation had been created in another jurisdiction." *Gentzel v. Williams*, 25 Kan. App. 2d 552, 556, 965 P.2d 855 (1998). The result of this expansive authority was "often multiple, inconsistent obligations existing for the same" parent, as well as "injustice in that [parents] could void their responsibility by moving to another jurisdiction and having their support obligations modified or even vacated." 25 Kan. App. 2d at 556. See, e.g., *Burnworth v. Hughes*, 234 Kan. 69, 76-77, 670 P.2d 917 (1983) (Kansas court could not enforce California child-support order but had jurisdiction to enter a different, albeit conflicting, order); *Dipman v. Dipman*, 6 Kan. App. 2d 844, 635 P.2d 1279 (1981) (reversing dismissal of action to modify child-support obligation included in a Georgia divorce decree).

The Kansas Legislature—along with legislatures in all other states—enacted UIFSA to address these concerns. Now codified in Kansas at K.S.A. 2019 Supp. 23-36,601 et seq., UIFSA establishes a uniform, nationwide procedure for issuing, modifying, and enforcing child and spousal support. *McNabb v. McNabb*, 31 Kan. App. 2d 398, 407-08, 65 P.3d 1068 (2003).

At its core, UIFSA was adopted to prevent the issuance of multiple support orders by different jurisdictions as families move between and interact with different states. To prevent the issuance of overlapping or conflicting orders, UIFSA establishes a "one-order" system whereby all states that have adopted UIFSA recognize and enforce the same obligation consistently. *Gentzel*, 25 Kan. App. 2d at 556-57. The goal of this uniform structure is to ensure that "'only one valid support order may be effective at any

7

one time.'" *In re Marriage of Amezquita & Archuleta*, 101 Cal. App. 4th 1415, 1420, 124 Cal. Rptr. 2d 887 (2002).

To achieve this aim, UIFSA adopts the principle "'of continuing, exclusive jurisdiction to establish and modify'" child support. *Gentzel*, 25 Kan. App. 2d at 556 (quoting Sampson and Kurtz, *UIFSA: An Interstate Support Act for the 21st Century*, 27 Fam. Law Qtrly. 85, 88 [1993]); see K.S.A. 2019 Supp. 23-36,205. The court that issued the controlling child-support order

> "'is the only body entitled to modify [its child-support order] so long as it retains continuing, exclusive jurisdiction under the Act. Another state, while required by UIFSA to enforce the existing decree, has no power under that Act to modify the original decree or enter a support order at a different level.'" *Gentzel*, 25 Kan. App. 2d at 556 (quoting 27 Fam. Law Qtrly. at 88).

Under this framework, Kansas courts may *enforce* out-of-state orders concerning child support at any time, as long as they have personal jurisdiction over the parties and the out-of-state order is properly registered according to the procedures set forth in UIFSA. See K.S.A. 2019 Supp. 23-36,601 through K.S.A 2019 Supp. 23-36,603. Once those requirements are met, a Kansas court "shall recognize and enforce, *but may not modify*, a registered support order." (Emphasis added.) K.S.A. 2019 Supp. 23-36,603(c). Efforts to merely enforce out-of-state orders have no effect on the continuing, exclusive jurisdiction of the out-of-state tribunal to modify its existing orders. See K.S.A. 2019 Supp. 23-36,610.

A Kansas court does not have jurisdiction to *establish* or *modify* child-support obligations in a case originally filed in another state (like Florida) unless continuing, exclusive jurisdiction over that case is first transferred to Kansas. See K.S.A. 2019 Supp. 23-36,204(b) (Kansas courts "may not exercise jurisdiction to establish a support order" if the petition was first filed in another state authorized to hear the case.); K.S.A. 2019

Supp. 23-36,205 (describing the circumstances when a court has "continuing, exclusive jurisdiction" to modify child-support orders). The process of transferring jurisdiction requires several steps. Highly summarized, the party seeking to transfer the case to Kansas must register the out-of-state order, meet residency and notification requirements, and demonstrate a need to transfer the case.

Most importantly for purposes of our discussion, UIFSA only authorizes a court to exercise jurisdiction over a case and modify an out-of-state order if that order is first "registered in this state." K.S.A. 2019 Supp. 23-36,611(a). K.S.A. 2019 Supp. 23-36,609 states that a party "seeking to modify . . . a child support order issued in another state shall register that order in this state in the same manner provided in K.S.A. 2019 Supp. 23-36,601 through 23-36,608."

K.S.A. 2019 Supp. 23-36,602(a) sets forth the procedure for registering an out-of-state support order in a Kansas court:

"[A] support order or income withholding order . . . may be registered in this state by sending the following records to the appropriate tribunal in this state:
    "(1) A letter of transmittal to the tribunal requesting registration and enforcement;
    "(2) two copies, including one certified copy, of the order to be registered, including any modification of the order;
    "(3) a sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage;
     "(4) the name of the obligor and, if known:
    (A) The obligor's address and social security number;
    (B) the name and address of the obligor's employer and any other source of
    income of the obligor; and
    (C) a description and the location of property of the obligor in this state not
    exempt from execution; and

9

"(5) except as otherwise provided in K.S.A. 2019 Supp. 23-36,312, and amendments thereto, the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted."

When these registration requirements are met, the Kansas court "shall cause the order to be filed as an order of a tribunal of another state." K.S.A. 2019 Supp. 23-36,602(b). A party may file a request to modify the out-of-state support order "at the same time as the request for registration or later." K.S.A. 2019 Supp. 23-36,602(c).

The requesting party must notify other interested parties and agencies of the completed registration. Anyone wishing "to contest the validity or enforcement of the registered order" must request a hearing within 20 days. See K.S.A. 2019 Supp. 23-36,605(b)(2); K.S.A. 2019 Supp. 23-36,606. "If the nonregistering party fails to contest the validity or enforcement of the registered support order in a timely manner, the order is confirmed by operation of law." K.S.A. 2019 Supp. 23-36,606(b). Ultimately, if the Kansas court grants the request and modifies the parties' previous child-support obligations, "the tribunal of this state becomes the tribunal of continuing, exclusive jurisdiction." K.S.A. 2019 Supp. 23-36,611(e).

Both parties in this case agree that Chalmers did not attach "two copies, including one certified copy," of the Florida order to his petition for registration. The district court found Chalmers' failure to attach these orders—and thus his failure to comply with K.S.A. 2019 Supp. 23-36,602(a)(2)—to be fatal to his registration attempt. The court explained that the Florida child-support order "is the actual subject of the registration," and thus attaching the order is a "critical element of the registration process." Because the order was not properly registered, the district court concluded it had no subject-matter jurisdiction to modify the Florida order.

10

Chalmers challenges this ruling in two respects. He argues that Burrough's failure to raise the defective registration within 20 days of receiving the registration notice waived any challenge to the court's subsequent modification under K.S.A. 2019 Supp. 23-36,606(b). Chalmers also claims the district court erred in finding the registration defective; he argues the petition for registration substantially complied with UIFSA—even though he did not attach the requisite copies of the Florida order—as he included the case number, jurisdiction, and date of that order in his accompanying sworn statement. And Chalmers argues the district court could have, and should have, granted his motion to amend his original registration instead of dismissing the case for lack of jurisdiction.

Whether the district court had subject-matter jurisdiction to hear this case—including Chalmers' request for modification of the Florida order and his subsequent motion to amend his original registration—is a question of law appellate courts review de novo. *Dia v. Oakley*, 42 Kan. App. 2d 847, 849, 217 P.3d 1010 (2009), *rev. denied* 290 Kan. 1092 (2010). As the following discussion explains, we affirm the district court's dismissal for lack of subject-matter jurisdiction in light of the unique jurisdictional constraints of UIFSA.

1. *Challenges to a court's subject-matter jurisdiction can be raised at any time, including after the 20-day window in K.S.A. 2019 Supp. 23-36,605 and 23-36,606.*

Chalmers argues Burrough's failure to contest the registration of the Florida child-support order within the 20-day window in K.S.A. 2019 Supp. 23-36,605 and K.S.A. 2019 Supp. 23-36,606 barred her from later challenging that registration on jurisdictional grounds. Burrough asserts that challenges to a court's subject-matter jurisdiction may be raised at any time and are not subject to UIFSA's 20-day timeframe for affirmative defenses.

11

This court exercises unlimited review over the interpretation of statutes, including the interpretation of UIFSA. *Dia*, 42 Kan. App. 2d at 849. The primary aim of statutory interpretation is to give effect to the legislature's intent, expressed through the plain language of the statute. *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 2, 374 P.3d 680 (2016). If a statute is plain and unambiguous, we will not speculate about the legislative intent behind that clear language. We do not add or ignore statutory requirements, and we give ordinary words their ordinary meanings. See 304 Kan. 755, Syl. ¶ 3.

"UIFSA provides only a limited opportunity to challenge an [out-of-state] order" once that order has been registered. *Dia*, 42 Kan. App. 2d at 852. In particular, K.S.A. 2019 Supp. 23-36,606(b) states that if a party does not contest "the validity or enforcement of the registered support order in a timely manner"—within 20 days of receiving notice under K.S.A. 2019 Supp. 23-36,605(b)(2)—then "the order is confirmed by operation of law." K.S.A. 2019 Supp. 23-36,607(a) lists the defenses a party may bring when "contesting the validity or enforcement of a registered support order or seeking to vacate the registration." These include defenses that

> "(1) The issuing tribunal lacked personal jurisdiction over the contesting party;
> "(2) the order was obtained by fraud;
> "(3) the order has been vacated, suspended or modified by a later order;
> "(4) the issuing tribunal has stayed the order pending appeal;
> "(5) there is a defense under the law of this state to the remedy sought;
> "(6) full or partial payment has been made;
> "(7) the statute of limitations under K.S.A. 2019 Supp. 23-36,604, and amendments thereto, precludes enforcement of some or all of the alleged arrearages; or
> "(8) the alleged controlling order is not the controlling order." K.S.A. 2019 Supp. 23-36,607(a).

A party challenging the registered order has the burden to prove one or more of these defenses applies. K.S.A. 2019 Supp. 23-36,607(a). "If the contesting party does not

establish a defense under subsection (a) to the validity or enforcement of a registered support order, the registering tribunal shall issue an order confirming the order." K.S.A. 2019 Supp. 23-36,607(c). "Confirmation of a registered support order . . . precludes further contest of the order with respect to any matter that could have been asserted at the time of registration." K.S.A. 2019 Supp. 23-36,608.

Kansas appellate courts have considered these provisions once before. In *Dia*, a child's father attempted to contest the validity of a registered, out-of-state support order as void under K.S.A. 23-9,607(a)(1) (now codified at K.S.A. 2019 Supp. 23-36,607[a][1]), claiming the judgment was entered in Germany and the German court did not have personal jurisdiction over him. The father asserted his personal-jurisdiction defense several months after the registration was confirmed by a Kansas court—well outside the 20-day window in K.S.A. 23-9,605(b)(2) (now codified at K.S.A. 2019 Supp. 23-36,605[b][2]). This court affirmed the district court's finding that his personal-jurisdiction defense was time-barred. 42 Kan. App. 2d at 852-53. We explained:

> "UIFSA provides that the issuing state has continuing and exclusive jurisdiction over that order with limited exceptions. UIFSA specifically allows a challenge to the validity of the order in the responding state, but only before confirmation of the order's initial registration. *After* confirmation, the defenses listed in UIFSA—specifically including lack of jurisdiction—may no longer be raised in the responding state." 42 Kan. App. 2d at 853.

Chalmers argues the same result should follow here, as the issue of the defective registration arose more than 20 days after Burrough received notice of its filing. But this case is distinguishable from *Dia* in at least two important respects.

*First*, Burrough did not challenge "the validity or enforcement" of the Florida order. Instead, she asserted that Chalmers had not properly registered the order, and the failure to do so deprived the court of subject-matter jurisdiction over Chalmers'

subsequent claims. That is, Burrough was not contesting the authenticity or enforceability of the Florida case, but the procedural soundness of Chalmers' efforts to register that case in Kansas. UIFSA's limitations on affirmative defenses only apply when someone is "contesting the validity or enforcement of a registered support order." See K.S.A. 2019 Supp. 23-36,607(a); see also K.S.A. 2019 Supp. 23-36,605(b)(2); K.S.A. 2019 Supp. 23-36,606(b) (concerning time constraints for "contest[ing] the validity or enforcement of the registered" order). Accord *Dia*, 42 Kan. App. 2d at 853 (recognizing "the defenses listed in UIFSA . . . may no longer be raised" after the 20-day window elapses). Those limitations do not apply here.

*Second*, questions of subject-matter jurisdiction—like that voiced by Burrough here—may be raised at any time, including by the court sua sponte. See *Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 395, 204, P.3d 562 (2009). Unlike personal jurisdiction, which concerns the court's authority over the parties and may therefore be waived, subject-matter jurisdiction goes to the power of a court to hear and decide a case. *Gentzel*, 25 Kan. App. 2d at 559-60. Parties cannot bestow the power to hear a case on a court when that authority does not otherwise exist, so subject-matter jurisdiction cannot be conferred by consent, waiver, or estoppel. *Kingsley*, 288 Kan. at 395.

Under UIFSA's procedural requirements, a Kansas court has no authority to modify child-support obligations in an out-of-state case until the out-of-state order is properly registered under K.S.A. 2019 Supp. 23-36,602. See K.S.A. 2019 Supp. 23-36,609 (a party "seeking to modify, or to modify and enforce, a child support order issued in another state *shall register that order in this state in the same manner provided in K.S.A. 2019 Supp. 23-36,601 through 23-36,608*" [emphasis added]); K.S.A. 2019 Supp. 23-36,611(a) ("upon petition a tribunal of this state may modify a child support order issued in another state *which is registered in this state*" [emphasis added]). Until then, the original, issuing court has continuing, exclusive jurisdiction over the case. K.S.A. 2019 Supp. 23-36,205(b)(2). As this court observed more than two decades ago in *Gentzel*,

14

UIFSA thus modified Kansas courts' general jurisdiction to consider out-of-state child-support orders—the jurisdiction discussed by the dissent—and replaced it with a uniform statutory framework vesting subject-matter jurisdiction in only one court at a time. 25 Kan. App. 2d at 557-58. And proper registration of an out-of-state child-support order is a prerequisite under UIFSA that must be satisfied before a Kansas court can take any action on that order. In short, without a properly registered out-of-state order, a Kansas court has no authority, i.e., no jurisdiction, to hear the case.

In light of this discussion, the district court did not err when it found it could only hear the case if Chalmers' petition complied with K.S.A. 2019 Supp. 23-36,602(a)'s registration requirements—that is, if the support order was properly registered under UIFSA. Our analysis thus turns to that question.

2. *Chalmers' petition did not substantially comply with K.S.A. 2019 Supp. 23-36,602.*

As the previous discussion indicates, in order to enforce or modify an out-of-state child-support order in Kansas, a person must register that order using the procedure in K.S.A. 2019 Supp. 23-36,602. That means, among other things, a person seeking to register an order must attach two copies of that order to the petition for registration, including at least one certified copy. K.S.A. 2019 Supp. 23-36,602(a)(2). Chalmers did not attach any copies of the Florida order. But he argues that his petition for registration included enough general information about that order to substantially comply with the spirit, if not the letter, of UIFSA's registration requirements.

As a preliminary matter, we—like other courts across the country—recognize that requiring strict compliance with UIFSA's registration procedures could lead to unnecessarily harsh results. See *Ex Parte Reynolds*, 209 So. 3d 1122, 1126-28 (Ala. Civ. App. 2016) (strict compliance with registration procedures of UIFSA is not required to confer subject-matter jurisdiction to enforce or modify a foreign child-support judgment);

15

*Nelson v. Halley*, 827 So. 2d 42, 46 (Miss. App. 2002) (although some statutorily required information for registration of a foreign judgment under the UIFSA was missing, the foreign judgment had adequately been filed); *Twaddell v. Anderson*, 523 S.E.2d 710, 714 (N.C. App. 1999) ("[U]nder UIFSA . . . substantial compliance with the requirements of [North Carolina's analog of K.S.A. 2019 Supp. 23-36,602] will suffice to accomplish registration of the foreign order."); *Kendall v. Kendall*, 340 S.W.3d 483, 499-501 (Tex. App. 2011) (permitting "substantial compliance" with the procedural registration requirements set forth in the UIFSA); *In re Marriage of Owen & Phillips*, 126 Wash. App. 487, 496-97, 108 P.3d 824 (2005) ("[S]ubstantial compliance with [UIFSA's] procedural registration requirements satisfies the statute governing filing an out-of-state support order, so long as the obligor is not prejudiced by the manner in which it is filed.").

As the Court of Appeals of Washington observed, UIFSA's "procedural safeguards are designed to minimize the risk of prejudice to the obligor [and do] not support a policy that punishes support recipients for minor, harmless procedural errors in registration." 126 Wash. App. at 497-98. At the same time, UIFSA's registration procedure was enacted for a reason, and we must interpret and apply that Act as written. See *Spencer Gifts*, 304 Kan. 755, Syl. ¶ 3. Thus, though strict compliance is not necessary, a party still must *substantially comply* with UIFSA's registration requirements before a Kansas court can take any action concerning an out-of-state child-support order.

Chalmers argues his case is analogous to *Reynolds*, where an Alabama appeals court found a mother had substantially complied with UIFSA. In *Reynolds*, the mother electronically filed the copies of the out-of-state judgment, but the certification was on the back of the document and did not appear in the electronic filing system. The court found she had substantially complied with the Act's registration requirements and allowed her to cure the technical deficiencies in the filing. *Ex Parte Reynolds*, 209 So. 3d at 1128. Chalmers contends the situation in *Reynolds* is similar to his own, but he glosses

16

over a key distinction: The registering party in *Reynolds* actually filed a copy of the out-of-state order. Chalmers did not.

Other cases from across the country that have considered defects in the registration process similarly provide little support for Chalmers' position. In *Owen*, the mother filed her registration petition—which included all necessary documents—with the court when she was supposed to file them with the Department of Social and Health Services. Her registration was forwarded to the correct location by the court, fixing the mistake. The Washington Court of Appeals concluded she had substantially complied with UIFSA. *In re Marriage of Owen & Phillips*, 126 Wash. App. at 495-98. In *Nelson*, the mother again included all required documents when she sought to register an out-of-state child-support order, but she did not include the father's social security number and certain employment information. The *Nelson* court found that the out-of-state order itself had been appropriately filed and the missing data could be corrected. 827 So. 2d at 45-46. Chalmers did not merely file his petition in the wrong office or fail to include minor details; he wholly failed to attach the order he sought to register.

The district court concluded the attachment of the Florida order to be registered was a critical component of UIFSA's registration requirements. We agree. UIFSA states that an out-of-state order "is registered *when the order is filed* in the registering tribunal of this state." (Emphasis added.) K.S.A. 2019 Supp. 23-36,603(a). As the district court observed, the controlling out-of-state order is the focus of the modification or enforcement proceeding. Without a copy of that order, the district court cannot know its contours. Information like the case number, issuing court, and filing date—which Chalmers identified in his petition for registration—are important for identification purposes, but they are not a substitute for the order itself. Under these circumstances, we cannot say that Chalmers substantially complied with UIFSA's registration requirements.

17

Chalmers' argument that Burrough was not prejudiced by the defect in his registration is similarly without merit since a Kansas court has no jurisdiction under UIFSA until an out-of-state order is properly registered. Only then does a Kansas court have the authority to take action in the case. See *Auclair v. Bolderson*, 6 A.D.3d 892, 895, 775 N.Y.S.2d 121 (N.Y. App. Div. 2004) (noting the "failure to prove registration prevents New York courts from obtaining subject matter jurisdiction under both UIFSA and [the Federal Full Faith and Credit for Child Support Orders Act]"). Allegations as to prejudice are not part of this analysis.

In his final argument on appeal, Chalmers asserts that dismissal was not required, as the district court could have permitted him to amend his petition to attach the Florida order. It is true that appellate courts have often indicated permission to amend a pleading should be freely granted if the amendment is timely filed and notice given to all parties. See *James v. City of Wichita*, 202 Kan. 222, Syl. ¶ 4, 447 P.2d 817 (1968). But that rule presupposes a court has the authority to hear the case in the first place. Here, the fundamental defect in Chalmers' registration prevented the district court from acquiring jurisdiction over the case at all. Thus, the proper course was to dismiss the case and allow Chalmers to properly register the Florida order in Kansas in compliance with UIFSA.

Without proper registration of the Florida order in Kansas, the district court had no subject-matter jurisdiction to take any action in the case. Thus, the court correctly dismissed Chalmers' registration petition and accompanying request for modification.

Affirmed.

* * *

ATCHESON, J., dissenting:  The Uniform Interstate Family Support Act (UIFSA) was adopted across the country about 25 years ago to streamline the enforcement of out-

18

of-state child support orders and to avoid conflicting orders from more than one state. The majority today impedes those laudable objectives by endorsing the Sedgwick County District Court's mistaken idea that the UIFSA modifies conventional concepts of subject matter jurisdiction to render enforcement orders void for procedural irregularities that ordinarily would be treated as waivable defects. The language of the UIFSA neither contains nor implies such an expansion of subject matter jurisdiction and simply imposes procedural conditions precedent to a court's exercise of its authority to enforce an out-of-state support order in a particular case—a limitation jurisprudentially different from and narrower than subject matter jurisdiction. I, therefore, respectfully dissent.

As I explain, my reading of the UIFSA would be of little practical benefit to Almario Chalmers in this distinctly atypical case in which he has sought to reduce his child support obligations established in an order originating with the Florida courts. Chalmers filed in Sedgwick County to modify the support order because his daughter and Brittany Burrough, the child's mother, lived in Wichita and he no longer lived in Florida.

In the vast majority of cases, however, a parent with a court order for child support looks to enforce that obligation against the other parent who has defaulted. For them, the difference between a limitation on a court's case specific authority to issue orders enforcing an out-of-state child support order and a deprivation of subject matter jurisdiction would be substantial. A court order issued without authority in a given case typically is voidable, meaning the party ordered to act may be deemed to have ratified the order if he or she complies without objection and may be estopped to undo that compliance. So absent a timely objection, a delinquent parent could not recoup child support payments made to comply with a procedurally deficient enforcement order. Conversely, an order from a court without subject matter jurisdiction is void and cannot be enforced. The defect can be raised at any time, and the parties should be returned to the position they occupied before the order was entered. In a UIFSA action, a delinquent

19

parent would be entitled to the return of any payments made in satisfaction of the void enforcement order.

Nothing in the language of the UIFSA requires the unconventional (and specious) application of subject matter jurisdiction the majority endorses. And the policies animating the UIFSA weigh strongly against the notion the drafters planted that kind of jurisdictional time bomb in the procedural mechanisms for enforcement or modification of an out-of-state support order.

*Differentiating Subject Matter Jurisdiction and Case Specific Judicial Authority*

Subject matter jurisdiction refers to the judicial right of a court to hear a particular kind of case or legal dispute. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639, 129 S. Ct. 1862, 173 L. Ed. 2d 843 (2009) ("'Subject matter jurisdiction defines the court's authority to hear a given type of case.'") (quoting *United States v. Morton*, 467 U.S. 822, 828, 104 S. Ct. 2769, 81 L. Ed. 2d 680 [1984]); *Kingsley v. Kanas Dept. of Revenue*, 288 Kan. 390, Syl. ¶ 1, 204 P.3d 562 (2009); *In re Estate of Heiman*, 44 Kan. App. 2d 764, 766, 241 P.3d 161 (2010). That right may be conferred by statute or constitutional mandate. In Kansas, district courts have general original jurisdiction, meaning they may hear cases or legal disputes unless they have been specifically deprived of subject matter jurisdiction. See K.S.A. 20-301 (district court in each county "shall have general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law"); *In re Marriage of Williams*, 307 Kan. 960, 967-68, 417 P.3d 1033 (2018); *In re Estate of Heiman*, 44 Kan. App. 2d at 766-67. The district courts have subject matter jurisdiction over issues related to child support. See K.S.A. 2019 Supp. 23-2204(b)(2) (recognizing legal duty of father and mother to support child; duty enforceable through legal action including support orders); K.S.A. 2019 Supp. 23-2210(a) (district court has jurisdiction over action to determine parentage of child that may be joined with action for support); K.S.A. 2019 Supp. 23-3001(a) (in divorce action,

20

district court "shall make provisions for the support and education of the minor children").

The parties cannot by agreement or acquiescence endow a court with subject matter jurisdiction. *Kingsley*, 288 Kan. 390, Syl. ¶ 1; *In re Estate of Heiman*, 44 Kan. App. 2d at 766. And a court is obligated to question its subject matter jurisdiction even if the parties have not. 44 Kan. App. 2d at 766. Because a court without subject matter jurisdiction lacks the right to adjudicate the type of dispute before it, any orders or judgments it issues are of no legal force. They are, in a word, void. *In re Marriage of Williams*, 307 Kan. at 963; *In re Estate of Heiman*, 44 Kan. App. 2d at 766. The losing party can attack the orders or judgments at any time, even after complying with them for years.

Although courts have subject matter jurisdiction over a type of case, they may lack the authority to adjudicate fully a particular case of that type for any number of reasons. In a typical civil case, for example, a district court lacks the authority to enter a judgment against a defaulting defendant who has entered an appearance unless the plaintiff serves a notice of intent to seek default. See K.S.A. 2019 Supp. 60-255(a). If a defendant then timely challenges the lack of notice, the judgment should be set aside in favor of further proceedings, a remedy consistent with the court having subject matter jurisdiction. See *Hood v. Hayes*, 7 Kan. App. 2d 591, 597-98, 644 P.2d 1371 (1982). Or an out-of-state defendant may have insufficient contacts with the forum state to be sued there for a particular wrong consistent with due process considerations—a lack of personal jurisdiction, not subject matter jurisdiction. See *Walden v. Fiore*, 571 U.S. 277, 291, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014). Unlike a lack of subject matter jurisdiction, a lack of personal jurisdiction may be waived or forfeited. See *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxite de Guinee*, 456 U.S. 694, 702-04, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982); *In re Marriage of Williams*, 307 Kan. at 966.

21

The United States Supreme Court has periodically cautioned against an all too common mistake in failing to distinguish subject matter jurisdiction over a type or class of cases, on the one hand, and judicial authority to adjudicate a specific legal dispute between specific parties, on the other. *Union Pacific R. Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81-82, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009); *Insurance Corp. of Ireland*, 456 U.S. at 701. In *Union Pacific*, the Court drew a pointed distinction between subject matter jurisdiction and a "claim-processing rule" the violation of which could derail an action if a defendant raised it but would be forfeited if not. 558 U.S. at 81-82 (citing timely filing of administrative charge of discrimination with Equal Employment Opportunity Commission as claim-processing rule for private civil actions alleging violation of Title VII). Other courts have taken note of the difference. See, e.g., *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1052 (Fed. Cir. 2012); *Matter of M.A.*, 895 N.W.2d 477, 480 (Iowa App. 2017); *In re Schneider*, 173 Wash. 2d 353, 360, 268 P.3d 215 (2011).

As I have just indicated, if a court deviates from a claim-processing rule, the result is a voidable order or judgment that the disadvantaged party must challenge in a timely manner or any potential relief based on the defect will be forfeited. The Iowa Court of Appeals recently outlined the rule by first explaining a court may have subject matter jurisdiction but may lack the authority to hear a particular case. In that circumstance, a court's judgment is voidable rather than void, so "'where subject matter jurisdiction exists, an impediment to a court's *authority* can be obviated by consent, waiver or estoppel.'" *Matter of M.A.*, 895 N.W.2d at 480 (quoting *State v. Mandicino*, 509 N.W.2d 481, 483 [Iowa 1993]). The principle is well settled. See *Union Pacific R. Co.*, 558 U.S. at 81-82; *State ex rel. Gains v. Go Go Girls Cabaret, Inc.*, 187 Ohio App. 3d 356, 362, 932 N.E.2d 353 (2010) ("[L]ack of subject-matter jurisdiction is the type of jurisdiction that can void a judgment; however, a lack of authority to rule when the court has subject-matter jurisdiction results in a voidable rather than a void judgment."); 56 Am. Jur. 2d, Motions, Rules, and Orders § 47 ("[A]n order entered by a district court having jurisdiction but

22

without authority is voidable but is not void."); 60 C.J.S., Motions and Order § 76 ("An order issued by a court with subject matter jurisdiction, even if arguably erroneous and thus voidable, is still a court order.").

*Structure and Purpose of the UIFSA*

The question here becomes how those principles of subject matter jurisdiction and judicial authority to act in a specific case apply to Chalmers' inarguable failure to file a legally sufficient registration of the Florida child support order with the Sedgwick County District Court. The answer requires an examination of the language and purpose of the UIFSA.

The National Conference of Commissioners on Uniform State Laws finalized the model UIFSA in 1992 with the aim of facilitating the interstate enforcement of child support orders and curtailing efforts of parents required to pay support to evade their obligations by moving to and obtaining conflicting orders in other states, among other ploys. Early on, Congress "encouraged" states to adopt the UIFSA by conditioning the receipt of federal funding for child support enforcement services on its enactment. See UIFSA, Prefatory Note at 1 (rev. 2008). The fiscal carrot worked, and all 50 states have enacted the UIFSA. The model act has been revised periodically, most recently in 2008. Kansas has adopted the latest version of the UIFSA.

Pertinent here, the UIFSA generally permits a court in one state to enforce a support order issued in another state and, in more limited circumstances, to modify such an order. See K.S.A. 2019 Supp. 23-36,603 (enforcement of order upon registration); K.S.A. 2019 Supp. 23-36,611 (modification of registered order from another state). In the vast majority of cases, parents entitled to receive child support seek to enforce out-of-state orders against obligated parents who aren't paying. And they typically do so through state agencies charged with assisting in securing support payments rather than through

privately retained lawyers. See UIFSA, § 606, comment at 82 (rev. 2008); § 611, comment at 89. So this case is unusual in that the obligated parent has sought to register and then modify the out-of-state support order, and both parties have hired lawyers.

The statutory requirements for registering an out-of-state order preparatory to seeking either court enforcement or modification are set out in K.S.A. 2019 Supp. 23-36,602. The registration request is supposed to include two copies of the order to be enforced, one of which must be certified. K.S.A. 2019 Supp. 23-36,602(a)(2). I agree with the majority and the authority it cites that the UIFSA calls for substantial compliance with the registration requirements and not technical exactitude. I also agree that submitting a registration request with *no* copies of the support order falls short of even that relaxed obligation. The conclusion seems ineluctable—a court shouldn't be expected to enforce or modify an order from another jurisdiction without being formally furnished a copy of that order.

I, too, find Chalmers' argument that Burrough waited too long to challenge the deficient registration unavailing. Chalmers relies on the 20-day time limit in K.S.A. 2019 Supp. 23-36,605(b)(2). But the time appears to cover only those statutory challenges to the out-of-state support order itself outlined in K.S.A. 2019 Supp. 23-36,607(a). Those grounds would undermine the support order's "validity or enforcement" and, in turn, would require "vacat[ing] the registration." The time limit does not govern the assertion of substantial defects independently rendering the registration ineffective. In turn, a district court need not vacate a registration that never became effective; K.S.A. 2019 Supp. 23-36,607(a) does not apply to that circumstance. Burrough, therefore, did not lose her right to attack the sufficiency of Chalmers' attempted registration to the time bar in K.S.A. 2019 Supp. 23-36,605(b)(2).

When an out-of-state child support order has been successfully registered in Kansas, the district court may then issue orders to enforce it. K.S.A. 2019 Supp. 23-

36,603. But Chalmers wanted the district court to reduce his support obligation in light of what he represented to be a substantial drop in his income. Registration alone is not enough to permit a court to modify an out-of-state support order. The party seeking modification of the order also must show: (1) the payor of the support, the recipient of the payments, and the child for whose benefit the support is due no longer reside in the state that issued the order; (2) he or she is not a resident of the state in which modification is sought; and (3) the district court can exercise personal jurisdiction over the party who is not seeking modification. K.S.A. 2019 Supp. 23-36,611(a)(1). For purposes of this appeal, nobody disputes those requirements for modification were satisfied.

Alternatively, a Kansas district court can modify a properly registered support order from another state if: (1) the child is a resident of Kansas; (2) the district court may exercise personal jurisdiction over one of the parties to the order; and (3) all of the parties to the order have filed consents with the court that issued the order requesting modification and continuing jurisdiction over the order in this state. K.S.A. 2019 Supp. 23-36,611(a)(2). Chalmers did not undertake his alternative procedure for modification. That procedure also requires legally sufficient registration of the support order.

Under the UIFSA, the court issuing a child custody support order retains "continuing, exclusive jurisdiction" to modify the order until another court renders a procedurally proper modification of that order. K.S.A. 2019 Supp. 23-36,205(a) (Kansas district court issuing child support order "shall exercise continuing, exclusive jurisdiction to modify its child support order"); K.S.A. 2019 Supp. 23-36,205(c) ("If a tribunal of another state has issued a child support order [that] modifies a child support order of a tribunal of this state, tribunals of this state shall recognize the continuing, exclusive jurisdiction of the tribunal of the other state."). The court making the modification then assumes continuing, exclusive jurisdiction over the modified order and the parties to it. K.S.A. 2019 Supp. 23-36,611(e) (Kansas district court assumes "continuing, exclusive jurisdiction" when it modifies a support order issued by an out-of-state court). The

25

modified support order supersedes the original order.

The model UIFSA does not confer subject matter jurisdiction on courts to handle child support issues generally or to enter support orders specifically. Nor does it purport to do so. The Act defines a covered order as "a support order for a child . . . under the law of the issuing state." UIFSA, § 102(2) (rev. 2008). So courts derive their subject matter jurisdiction over child support from legal sources external to the UIFSA. Kansas is no exception. See K.S.A. 2019 Supp. 23-36,102(b) (definition of "[c]hild support order"). The UIFSA does provide both an orderly mechanism for a court in one state to enforce and (sometimes) modify a particular support order issued by a court in another state and a check on a party to a support order trying to obtain a more favorable order in a second state. Those worthy goals are advanced through "claim-processing" rules and not manipulation of subject matter jurisdiction.

First, to enforce or modify an out-of-state support order, the party seeking court intervention must successfully register the order. Registration triggers the court's authority to enforce the order and is a condition precedent for a request to modify the order. As such, registration is simply a procedural gateway for a court to exercise authority over the specific order and the parties bound by that order. The drafters of the UIFSA intended nothing more. They describe registration as "a process, and the failure to register does not deprive an otherwise appropriate forum of subject matter jurisdiction." See UIFSA, § 601, comment at 73 (rev. 2008). The North Carolina Court of Appeals recently recognized that registration under the UIFSA "is a *procedural* requirement, not a *jurisdictional* one." *Hart v. Hart*, 836 S.E.2d 244, 248 (N.C. App. 2019) (citing N.C. Gen. Stat. § 52C-6-601 and comment to uniform act).

Similarly, the procedures permitting a court to modify an out-of-state support order after it has been registered reflect claims-processing rules and not a grant of subject matter jurisdiction. Those procedures bear none of the hallmarks of subject matter

jurisdiction. First, of course, they pertain to a specific support order and the parties to it, rather than a class or kind of legal dispute. Second, they do no more than expand a court's authority from simply enforcing a given order to modifying it. That would be a bizarrely bifurcated and truncated subject matter jurisdiction, breaking with all conventional notions of the concept. Finally, under the UIFSA, the parties can give mutual consent to a court to modify an out-of-state support order, if the child resides in the modifying state or that court can exercise personal jurisdiction over a party to the order. See K.S.A. 2019 Supp. 23-36,611(a)(2). But subject matter jurisdiction is a form of judicial power that cannot be conferred through the parties' consent. The Washington Supreme Court has recognized that UIFSA grants courts the authority to modify a support order but expressly rejected the argument modification of a given order entailed the exercise of subject matter jurisdiction. *In re Schneider*, 173 Wash. 2d at 361-62.

In construing a different statutory scheme dealing with the treatment of military pensions in divorce actions, the Kansas Supreme Court relied on the absence of any reference to subject matter jurisdiction in the statutory language coupled with the enumeration of "concepts related to a court's authority over a person" to find the scheme did not affect subject matter jurisdiction. *In re Marriage of Williams*, 307 Kan. at 974. The same force of reasoning can be applied to the UIFSA and leads to the same conclusion. The statutory scheme addresses the enforcement and modification of a given child support order and the rights and obligations of the individual parties to that order rather than creating a broad judicial power over child support as an area of law or a subject matter. So the "concepts" of the UIFSA focus on the handling of individual support orders. The systemic force of the UIFSA comes from its universal adoption across all 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands— not from some regulation of the subject matter jurisdiction of those courts.

In sum, the UIFSA does not bestow subject matter jurisdiction either through registration of an out-of-state order for enforcement or the additional requirements for

27

modification of that order. It grants authority to a court to act in those respects as to a particular order and the parties to that order. In turn, if a party fails to properly register a support order or to establish the requirements for modification, a court acting to enforce or modify the order does so without case-specific authority. Any resulting order of enforcement or modification is voidable. The adversely affected party must timely contest enforcement or modification in the trial court or on appeal—otherwise any challenge is lost.

*Majority and District Court Misconstrue UIFSA*

Deviating from the governing jurisdictional principles and the language of the UIFSA, the district court and the majority have erred in concluding Chalmers' legally inadequate registration deprives them of subject matter jurisdiction. They consequently have erred in determining the district court's orders were void and the case should be dismissed for lack of subject matter jurisdiction. As I have indicated, the correct analysis shows the district court exceeded its authority in this case in issuing the orders modifying Chalmers' support. The orders were voidable, not void. Burrough did properly challenge them, and the district court, therefore, could set them aside, i.e., vacate or void them, upon her request.

But Chalmers' action should not have been dismissed, since the district court had subject matter jurisdiction. He should have been allowed to file an amended registration substantially complying with K.S.A. 2019 Supp. 23-36,602. That would not have resuscitated the voidable orders Burrough disputed. But it would have allowed Chalmers to again seek modification of the Florida support order. Looking at this case from here, I see only a nominal advantage to Chalmers in the outcome. Instead of having to start from square one, he would start from something like square one and three-quarters.

My real concern with the majority's confusion of subject matter jurisdiction and what are rules for processing claims under the UIFSA lies not in the comparatively limited disadvantage to Chalmers but in the impact on the run of cases seeking recovery of delinquent support payments. In some of those cases, the difference between voidable orders and void orders could be quite significant.

For example, assume a recipient of child support payments (typically the child's mother) attempted to register a Missouri circuit court's support order for enforcement in the Sedgwick County District Court four years ago because the payor (typically the child's father) had moved to and now works in Wichita. But, like here, the registration did not include copies of the Missouri support order. In the absence of any legal objection from the payor, the recipient has obtained and executed income withholding orders, garnishments, or some combination during that time, covering current payments and eating into a substantial arrearage. The recovery likely would be measured in the thousands of dollars, if not tens of thousands.

The payor then hears about this opinion when it is published and files a motion to have the district court's collection efforts declared void for lack of subject matter jurisdiction, since the Missouri support order wasn't satisfactorily registered. He would be right under the rule the majority fashions, and unscrambling the mess would impose a hardship on someone, likely the recipient of the support payments and, thus, the child, since the seemingly successful collection efforts would have to be undone. Cf. *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 718, 89 P.3d 573 (2004) (garnishment invalid if underlying judgment void for lack of subject matter jurisdiction); *People v. Kim*, 212 Cal. App. 4th, 117, 125, 151 Cal. Rptr. 3d 154 (2012) (A void judgment "'is, in legal effect, no judgment'" and "'[b]eing worthless in itself, all proceedings founded upon it are equally worthless.'"). The delinquent payor would reap an inequitable benefit. But if the inadequate registration simply resulted in voidable collection orders, the payor's late attack presumably would be barred by forfeiture, acquiescence, or estoppel. See *Matter of*

29

*M.A.*, 895 N.W.2d at 480; 46 Am. Jur. 2d, Judgments § 27 ("A court's failure to follow proper procedure results in an act in excess of its jurisdiction such that the judgment remains valid but voidable, and the parties may be precluded from setting it aside by waiver or estoppel."). That result better serves the purposes of the UIFSA and fairly balances the rights of the parties to a support order.

Ultimately, the majority never lays out a developed explanation for finding the UIFSA confers subject matter jurisdiction when neither its express language nor its operation actually supports that sort of expansive conclusion. The majority refers to "the unique jurisdictional constraints of UIFSA," but that's no more than a phantom refuge that could be applied by rote to a lot of model statutory schemes. Slip op. at 11. Uniqueness is not itself a basis for or an indicator of subject matter jurisdiction. Inferentially at least, the majority seems to equate the UIFSA's reference to a court's "continuing, exclusive jurisdiction" over a particular child support order and the parties to it with subject matter jurisdiction over child support issues generally. But the fit is distinctly untidy, since it works only by ignoring the basic tenets of subject matter jurisdiction. Moreover, it would fail here, since registration of a support order does not affect a court's continuing and exclusive jurisdiction over the substance of the order. Registration merely permits a court in another state to enforce the order as written against a party over whom that court may exercise personal jurisdiction.

The strange sort of evanescent subject matter jurisdiction the majority ascribes to the UIFSA is unnecessary to the Act's fundamental objectives. The UIFSA's procedural requirements for registration and the additional mandated proof for modification that the parties and child no longer have a connection to the state issuing a support order satisfactorily protect against forum shopping and conflicting orders, especially as a delinquent parent's device to evade support obligations. There is no reason to imbue those protections with the exceptional power of subject matter jurisdiction they would not otherwise command. Rendering enforcement actions void for lack of subject matter

30

jurisdiction based on an insufficient registration of the underlying support order would actually impair the objectives of the UIFSA. Cf. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 211, 863 N.E.2d 236 (2007) (Courts should declare orders void, especially in collateral proceedings, "'only when no other alternative is possible,'" since "'disastrous consequences'" often attend doing so.). We should not open that door in this case.

The majority cites, more or less in passing, two cases from other states labeling the procedural requirements in the UIFSA as conditions conferring subject matter jurisdiction. Neither case offers persuasive support for the proposition. In *Auclair v. Bolderson*, 6 A.D.3d 892, 895, 775 N.Y.S.2d 121 (N.Y. App. Div. 2004), the court treated the failure to register an out-of-state child support order as a defect defeating subject matter jurisdiction of the New York courts. But the *Auclair* decision falls into the rabbit hole the Supreme Court described and warned against in *Union Pacific*: Without identifying or discussing the contours of subject matter jurisdiction, the decision simply assumes (incorrectly) the claim processing rules of the UIFSA and the parallel Federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B (2016), for handling a specific support order dictate subject matter jurisdiction. The Alabama Court of Appeals decision in *Ex parte Reynolds*, 209 So. 3d 1122, 1126-28 (Ala. Civ. App. 2016), is even less illuminating. The *Reynolds* court held that substantial compliance with the UIFSA's registration requirement was sufficient for a party to then seek enforcement of an out-of-state support order. The opinion referred to registration as conferring subject matter jurisdiction—an observation that was both entirely superfluous to the facial sufficiency of the registration documents and offered without analysis.

The majority also cites *Gentzel v. Williams*, 25 Kan. App. 2d 552, 557-58, 965 P.2d 855 (1998), but that case mistakenly labels the UIFSA's limitation on where a party may seek modification of a support order as an issue of subject matter jurisdiction when it actually deals with venue. As I have already indicated, the UIFSA prohibits a party from seeking modification of an out-of-state support order in the state in which he or she

then resides. See K.S.A. 2019 Supp. 23-36,611(a)(1)(B) (petitioner seeking modification in Kansas courts must be "a nonresident of this state"). That requirement for modification is not at issue here, but it was in *Gentzel*. The drafters of the UIFSA deliberately precluded a party from seeking modification of a support order in his or her home state because requiring the other party to resist in a distant forum would have been unfair in the run of cases. See UIFSA, § 611, comment at 88-89 (rev. 2008). They explained the rationale for their rule this way: "The play-away rule achieves rough justice between the parties in the majority of cases by preventing ambush in a local tribunal." § 611, comment at 89.

In *Gentzel*, Williams, who had moved to Kansas, filed in Reno County District Court seeking a reduction in his child support under an order that had been issued in Arizona. By then, Gentzel and the children had moved to Texas. The district court granted the reduction, and Gentzel appealed. This court correctly recognized Williams did not satisfy the requirements in K.S.A. 23-9,611(a), now recodified at K.S.A. 2019 Supp. 23-36,611(a), to seek modification because he lived in Kansas and filed here rather than in Texas. 25 Kan. App. 2d at 558. Without any detailed explanation, this court labeled the procedural defect as one affecting subject matter jurisdiction. *Gentzel*, 25 Kan. App. 2d at 560. But that is incorrect. The district court had subject matter jurisdiction to hear and decide child support issues and, indeed, could have properly entertained a request from Gentzel to modify the Arizona order. Subject-matter jurisdiction doesn't come and go depending on who brings an action. The UIFSA merely restricted where Williams could seek modification of the order. Limitations on where a particular action may be brought, like those in K.S.A. 2019 Supp. 23-36,611(a), address venue and not subject matter jurisdiction.

Moreover, the parties in *Gentzel* could have consented to proceed in the Reno County District Court—an option wholly inconsistent with a lack of subject matter jurisdiction. See K.S.A. 2019 Supp. 23-36,611(a)(2). In that respect, proper venue may be

a mandatory condition for modification of a support order under the UIFSA that the nonmoving party can give up only by consent. In short, *Gentzel* offers nothing of substance advancing the majority's take on subject matter jurisdiction.

There is, to be sure, a division of authority on whether compliance with the requirements for registration or modification of an out-of-state support order are conditions precedent for subject matter jurisdiction or simply for judicial authority over the particular order and the parties to it. See *Pappas v. O'Brien*, 193 Vt. 340, 351 n.5, 67 A.3d 916 (2013) (recognizing split of authority, citing cases, and declining to address the issue). Cases coming down on the side of subject matter jurisdiction join *Auclair* in the rabbit hole with their summary conclusions and lack of analysis. See, e.g., *McCarthy v. McCarthy*, 785 So. 2d 1138, 1140 (Ala. Civ. App. 2000); *Stone v. Davis*, 148 Cal. App. 4th 596, 602, 55 Cal. Rptr. 3d 833 (2007); *State ex rel. Freeman v. Sadlier*, 586 N.W.2d 171, 173-74 (S.D. 1998). Cases rejecting subject matter bars, typified by *In re Schneider*, 173 Wash. 2d at 360-62, do so after assessing the legal principles governing jurisdiction. See, e.g., *In re Marriage of Haugh*, 225 Cal. App. 4th 963, 977, 170 Cal. Rptr. 3d 683 (2014); *Hart*, 836 S.E.2d at 248; *Kendall v. Kendall*, 340 S.W.3d 483, 498-501 (Tex. App. 2011). I haven't attempted to survey the competing cases or to count noses as to how many there are on each side. As my analysis suggests, we should align with those courts rejecting the idea that the failure to comply with the registration requirements of the UIFSA strips a court of subject matter jurisdiction.

I, therefore, respectfully dissent from the majority's decision to affirm the district court in dismissing Chalmers' action for want of subject matter jurisdiction because he failed to substantially comply with K.S.A. 2019 Supp. 23-36,602(a). Notwithstanding that failure, the district court still had subject matter jurisdiction.